IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**EULOGIO SOTO-ROJAS**,                                    Civil Case No. 09-6218-KI

                  Plaintiff,

                                   OPINION AND ORDER

   vs.

**COMMISSIONER SOCIAL SECURITY
ADMINISTRATION**,

                  Defendant.


    Richard F. McGinty
    McGinty & Belcher, PC
    P.O. Box 12806
    Salem, Oregon  97309

         Attorney for Plaintiff

    Dwight C. Holton
    United States Attorney
    District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

Leisa A. Wolf
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington  98104

        Attorneys for Defendant

KING, Judge:

Eulogio Soto-Rojas brings this action pursuant to Section 205(g) of the Social Security

Act ("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his  application

for Disability Insurance ("SSDI") benefits under Title II of the Act.

## PROCEDURAL BACKGROUND

Mr. Soto-Rojas filed an application for benefits on January 27, 2005, with an alleged

onset date of July 20, 2002.  The application was denied initially and on reconsideration.  Mr.

Soto-Rojas filed a request for an administrative hearing, which was held on July 8, 2008, before

administrative law judge ("ALJ") Marilyn Mauer.  On September 4, 2008, the ALJ issued an

unfavorable decision.  The Appeals Council affirmed the decision of the ALJ, making the ALJ's

decision the final decision of the Commissioner.

Mr. Soto-Rojas  was born in 1969, and was 39 at the time of the ALJ's decision.  He has

an eighth-grade education.  He is insured for SSDI benefits through December 31, 2007.  His

past work experience has been as a fruit picker on a farm, field hand on a ranch, construction

laborer, and warehouse laborer.  He last worked in July 2002 as a warehouseman.

## MEDICAL EVIDENCE

<u>Lower back pain</u>

Mr. Soto-Rojas was involved in an automobile accident on July 21, 2002.  He was the

restrained driver of a car moving at approximately two mph when another car struck his car.  Mr.

Soto-Rojas was treated for back pain by a chiropractor, Damon Spink, between July 23, 2002 and

September 30, 2005.  Dr. Spink provided him with excused absences from work on the basis of

total disability for a continuous period between July 22, 2002 and September 30, 2003.

Magnetic Resonance Imaging ("MRI") studies of the lumbar spine on August 21, 2002

and November 15, 2002 showed stable disc desiccation at L5-S1, with annular disc bulge causing

minimal to mild encroachment of the neural foramina at that level.  An MRI of the lumbar spine

on December 29, 2005 showed mild disc desiccation at L5-S1, with minimal foraminal

narrowing.  There was no disc herniation or change compared to MRIs done in 2002.  An MRI of

the lumbar spine on October 23, 2007 showed degenerative disc disease with spondylitic ridging

and facet degenerative changes producing mild to moderate neuroforaminal narrowing at the L5-

S1 level.  The radiologist concluded that the disc disease had "progressed slightly when

compared to the prior examination of 12/29/05."  Tr. 164.  At the L4-L5 level, there was minimal

disc disease without significant compromise of the canal.

On January 28, 2003, Mr. Soto-Rojas saw Frederick Tiley, M.D. for low back pain.  Mr.

Soto-Rojas reported that since the automobile accident, he had had low back pain and

paresthesias in both legs.  He described his  pain after walking a short distance as the worst pain

he had ever experienced.  After examination, Dr. Tiley diagnosed degraded disk at L5-S1 in

association with "what appears to be some low grade instability secondary to a pars defect

without spondylolisthesis."  Tr. 331.  Dr. Tiley referred Mr. Soto-Rojas to Don Olson, M.D., for

a diskogram.  However, Mr. Soto-Rojas apparently never saw Dr. Olson.

On February 26, 2003, Mr. Soto-Rojas was given an independent medical examination

("IME") by Joseph Sacamano, M.D., an orthopedic surgeon.  Dr. Sacamano diagnosed cervical

strain, resolved; contusion to the left shoulder and elbow, resolved; lumbar strain, by history;

florid pain behavior; degenerative disk disease at L5-S1, moderate; and spondylolysis at L5-S1,

preexisting.  Dr. Sacamano thought it not unreasonable to conclude that the motor vehicle

accident had produced the soft tissue injuries noted.  Dr. Sacamano commented,

> The patient has had extensive chiropractic treatment, which by his own admission
> has produced no benefit.  I would discontinue that treatment . . . . I am puzzled at
> the difference in interpretation of the patient's examination between Dr. Tiley and
> myself.  In my examination today, although I tried my best  to put the patient at
> ease and to perform an unbiased examination, this physical examination was
> remarkable in the presence of widespread and florid pain behavior.  As always,
> surgical treatment must be withheld in cases where indications are ambiguous. . . .
> In summary, I think there is no good indication for the presence of residual
> structural injury from the motor vehicle accident and beyond that, widespread
> evidence that psychosocial factors are at work.  I believe all treatment should be
> discontinued and the patient released to full activity.  It is difficult to do this with
> his expression of unrelenting pain but I believe this action would be the kindest
> for him in the long run, and stands the best chance of returning him to his pre-
> injury status.

Tr. 355.

On May 8, 2003, Mr. Soto-Rojas saw Timothy Borman, an osteopathic physician, for low

back and left lower extremity pain.  Mr. Soto-Rojas described the back pain as ranging from 6-10

on a scale of 0-10.  He said the pain was worsened with lifting and bending and prolonged

standing.  His walking was limited to a quarter of a mile.  He was currently taking six tablets of

acetaminophen and eight tablets of Advil a day. On November 6, 2003, Dr. Borman wrote a

prescription for Vicodin.  Dr. Borman recommended surgery for L5-S1 spondylolisthesis.

On July 26, 2004, Mr. Soto-Rojas was given an IME by George McNeill, M.D., an

orthopedic surgeon.  Mr. Rojas reported that his symptoms were getting progressively worse

across his low back and down his legs.  The pain was constant, 24 hours a day, and was normally

an eight on a scale of 1-10, but sometimes "beyond 10."  Tr. 328.

He told Dr. McNeill he was able to walk only a quarter of a mile before numbness and

tingling stopped him.  When describing the leg numbness, he was unable to localize a pattern to

the front, side or back; he said the pain was "the whole leg" and "inside the leg."  Id.  The soles

of his feet felt constantly numb.  He was not able to sit for any length of time.

Dr. McNeill reviewed Mr. Soto-Rojas's medical records and examined him, concluding

as follows:

> Since the patient was restrained in his seat with a three-point restraint it is not
> probable that he injured his low back [in the automobile accident], noting absence
> of complaints, findings and x-rays in the emergency room.  On 7/23/02 he had
> subjective back pain which was diagnosed as a lumbar strain by a chiropractor.
> He may have had some reactive muscle tightness but did not structurally damage
> his low back since his lumbar presentation, on 7/23/02, was much the same as that
> on 04/25/97.  Because of the florid pain behavior ([p]lease compare the exams by
> Drs. Tiley, Sacamano, Borman and myself), his degenerative disc disease, which
> is obviously pre-existing at L5-S1, is not in any way causing his present
> symptoms, which are not valid.  [On] 02/26/03, Dr. Sacamano's independent
> medical examination is essentially the same examination.  My conclusions are the
> same as his, especially regarding surgery.  I find no good evidence whatsoever that
> this man would in any way be helped in any way [sic] by any surgical procedure
> on his lumbar spine.  Finally, after two years of chiropractic treatment, which has
> seemingly not benefitted this patient at all, this should be discontinued.  In fact, I
> think that any active form of treatment will only make this patient's symptoms
> worse and more prolonged.

Tr. 346.

Spermatocele

On March 21, 2003, Mr. Soto-Rojas saw Mark Mhoon, M.D., a urologist, for a two-day history of left testicular pain two months earlier.  His pain resolved, but he subsequently had another two-day episode of mild chronic dull pain.  Dr. Mhoon noted that a February 2003 scrotal ultrasound showed a small cyst, and diagnosed a left spermatocele, currently asymptomatic.

On September 24, 2007, Mr. Soto-Rojas returned to Dr. Mhoon complaining of increased swelling under the left testis and pain with lifting, described as an aching sensation that usually lasted for two days.  Mr. Soto-Rojas elected surgical intervention.  Dr. Mhoon performed a left spermatocelectomy on November 20, 2007.

On December 5, 2007, Mr. Soto-Rojas reported decreased pain, but complained of tenderness to touch of the left testis and some mild swelling.  He did not require any pain medication.  Dr. Mhoon wrote that Mr. Soto-Rojas was "doing well."  Tr. 193.  On December 12, 2007, Mr. Soto-Rojas saw Dr. Mhoon for evaluation of a lump in the same spot as his spermatocelectomy.  Mr. Soto-Rojas reported that the tissues were tender to touch, but "otherwise no pain."  Id.  Dr. Mhoon's examination findings were "expected postoperative changes."  Id.

## HEARING TESTIMONY

Mr. Soto-Rojas testified at the hearing that he had not worked since July 2002.  He stated as a result of the accident, he had a fracture in his back that had continued to cause pain, preventing him from staying in one position for very long.  Mr. Soto-Rojas said he could sit

Page 6 - OPINION AND ORDER

about 10-15 minutes at a time; stand for 20-30 minutes; and walk about 50 feet before his leg began getting numb, but then said he could walk for "maybe half an hour." Tr. 542. Mr. Soto-Rojas said he has to lie down for 30 minutes several times a day, four or five times a day. He sometimes lies on the floor with an ice pack on his back. He takes ibuprofen and, occasionally, acetaminophen, for pain. When asked whether anything other than back pain interfered with his ability to work, Mr. Soto-Rojas said no.

When Mr. Soto-Rojas's attorney asked about surgery in November 2007, Mr. Rojas said he had "forgotten that," and explained that the surgery was to remove a cyst in his testicle. Tr. 545. His attorney asked if he still had pain even after the cyst was removed, and Mr. Rojas said yes, and that his doctor had told him that he would continue having pain even after the cyst was removed.

The ALJ observed that she was "absolutely certain there's no medical support" for continuing testicular pain in the record, so that if Mr. Soto-Rojas were alleging chronic testicular pain, he would "need something from a physician." Tr. 547. The ALJ opined that permanent testicular pain "would be a highly unusual result for that surgery," but that if Mr. Soto-Rojas wanted her to consider it, she would hold the record open for 30 days, "for you to get a note from the doctor saying he has disabling testicle pain." Id.

Mr. Soto-Rojas's attorney responded, "I can get a note from the doctor saying that he's getting treatment, that he gets checked up for that continuing . . . treatment. I'm saying it's a part of his condition." Id. The ALJ and the attorney agreed that the record did not contain the statement about continuing pain from the doctor, but the attorney represented that Mr. Soto-Rojas was "under continuing care for that condition." Id.

Page 7 - OPINION AND ORDER

Mr. Soto-Rojas testified that he had taken prescription pain medications for back pain, but that he was no longer taking them because of their side effects, headaches and nausea.

The ALJ called a vocational expert ("VE"), Kay Wise.  The VE testified that Mr. Soto-Rojas's previous work had been unskilled and performed at medium or heavy exertion levels. The ALJ asked her to consider an individual of Mr. Soto-Rojas's age, education and past relevant work experience, able to lift 20 pounds occasionally and 10 pounds frequently; "sit, stand and walk each for a total ... four hours out of an eight-hour day,"  "or can [inaudible] for eight hours out of an eight-hour day."  Tr. 553.  The ALJ included an additional requirement that the person be able to sit or stand at will and walk within the immediate area of the work station.  Further, because of pain, the individual was to be limited to "no more than tasks that are blunt easy steps consistent with "an SVP [Specific Vocational Preparation] of 2 in the Dictionary of Occupational Titles."  Tr. 554.

The VE opined that such an individual could not perform his past relevant work, because the hypothetical spoke to a light exertional level.  However, in her opinion, the ALJ's hypothetical individual could perform the type of work represented by the jobs of bench worker (unskilled, light, ability to sit, stand, and move about at will); electronics cleaner (light, with simple, routine tasks); and bottle packer (unskilled, light).

## STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401

(1971); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). However, the Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The initial burden of proving disability rests on the claimant. Meanel, 172 F.3d at 1113; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). This means an impairment must be medically determinable before it is considered disabling.

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, the Commissioner goes to step two, to determine whether the claimant has a "medically severe impairment or

combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c),

416.920(c). That determination is governed by the "severity regulation," which provides:

> If you do not have any impairment or combination of impairments which
> significantly limits your physical or mental ability to do basic work activities, we
> will find that you do not have a severe impairment and are, therefore, not disabled.
> We will not consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of

impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds

to the third step. Yuckert, 482 U.S. at 141.

In step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41. If a claimant's impairment

meets or equals one of the listed impairments, he is considered disabled without consideration of

her age, education or work experience. 20 C.F.R. s 404.1520(d), 416.920(d).

If the impairment is considered severe, but does not meet or equal a listed impairment,

the Commissioner considers, at step four, whether the claimant can still perform "past relevant

work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can do so, he is not considered

disabled. Yuckert, 482 U.S. at 141-42. If the claimant shows an inability to perform his past

work, the burden shifts to the Commissioner to show, in step five, that the claimant has the

residual functional capacity ("RFC") to do other work in consideration of the claimant's age,

education and past work experience. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f),

416.920(f).

## ALJ'S DECISION

The ALJ found that Mr. Soto-Rojas had one severe impairment, degenerative disc disease of the lumbar spine, for which the alleged date of onset coincided with the automobile accident. The ALJ found that an October 2007 x-ray confirmed degenerative disc disease with spondylitic ridging and facet degenerative changes producing mild to moderate neuroforaminal narrowing at the L5-S1 level.

The ALJ took note of evidence showing the existence of a left spermatocele discovered in March 2003 that had caused intermittent pain, and surgery for that condition in November 2007. The ALJ observed that according to the medical records, Mr. Soto-Rojas reported decreased pain after the surgery, but that he had testified at the hearing that he continued to experience pain and that his doctor had told him the pain would not go away even after the surgery. However, the ALJ found no clinical evidence to explain the lingering pain or any indication in the record that the pain presented any functional consequences.

Based on the testimony of the VE, the ALJ concluded that Mr. Soto-Rojas could not return to his past relevant work, but that he had the RFC to perform light work, with additional limitations to tasks no more complex than one to three steps and only occasional bending, twisting, crawling, crouching, climbing ramps, stairs, ladders, ropes and scaffolds.

## DISCUSSION

Mr. Soto-Rojas asserts that the ALJ erred by failing to: 1) develop the record by obtaining evidence related to Mr. Soto-Rojas's continuing testicular condition; 2) present the VE with the same RFC found by the ALJ; and 3) include Mr. Soto-Rojas's language limitation in the RFC assessment.

Page 11 - OPINION AND ORDER

1.      <u>Failure to develop the record</u>

Mr. Soto-Rojas asserts that he testified at the hearing in July 2008 that he still had pain related the left testicle. At the hearing, his attorney told the ALJ, "I can get a note from the doctor saying he's getting treatment. . . . I'm saying he's under continuing care for that condition." Tr. 547. Mr. Soto-Rojas argues that the ALJ's failure to obtain medical records substantiating his continuing care for testicular pain constituted a failure to develop the record.

The ALJ's duty to develop the record is triggered only by ambiguous evidence or a record that is inadequate for proper evaluation of the evidence. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001); <u>cf.</u> <u>Armstrong v. Commissioner</u>, 160 F.3d 587, 589 (9th Cir. 1998)(duty to develop record does not extend to a silent record that does not support disability). Mr. Soto-Rojas does not assert that the record is ambiguous; in fact, his attorney acknowledged at the hearing that the doctor's notes did not corroborate Mr. Soto-Rojas's testimony that the doctor had told him he would continue to have pain.

I conclude that the record is not inadequate for proper evaluation of the evidence. The ALJ said at the hearing that she would hold the record open for an additional 30 days so that Mr. Soto-Rojas could proffer evidence that he was under continuing medical care for testicular pain. Mr. Soto-Rojas did not provide that evidence. Mr. Soto-Rojas had the burden of proving the existence of a physical impairment that, either alone or in combination with other impairments, made him unable to work for 12 months or more. He failed to carry that burden. The ALJ was under no duty to obtain the evidence promised but not submitted by Mr. Soto-Rojas.

2.    <u>Hypothetical presented to VE</u>

Mr. Soto-Rojas asserts that because the ALJ failed properly to develop the record, her RFC assessment failed to take into account the functional limitations from testicular pain, thereby making the ALJ's hypothetical to the VE incomplete.

The ALJ must propose a hypothetical to the VE that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163 (9th Cir. 2001). An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence. <u>Id.</u> at 1165. If the claimant fails to present evidence that he suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE. <u>Id.</u> at 1164. If the hypothetical given to the VE by the ALJ does not reflect all of a disability claimant's limitations, the VE's testimony has no evidentiary value to support a finding that a claimant can perform jobs in national economy. <u>Matthews v. Shalala</u>, 10 F.3d 678 (9th Cir. 1993).

As discussed, the ALJ left the record open to enable Mr. Soto-Rojas to submit medical evidence substantiating his testimony that he had been told by Dr. Mhoon he would continue to experience testicular pain after the surgery.  Mr. Soto-Rojas did not proffer such evidence, and the record as it stands contains no indication that Mr. Soto-Rojas is being treated for testicular pain, nor any clinical evidence of an impairment that could cause the pain of which Mr. Soto-Rojas complains.  <u>See, e.g.</u>, <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347 (9th Cir. 1991)(en banc) (claimant's testimony about pain may be disregarded if unsupported by medical evidence which supports the existence of such pain, although the claimant need not submit medical evidence which supports the degree of pain).

Page 13 - OPINION AND ORDER

I find no error by the ALJ here.

Mr. Soto-Rojas also asserts that the ALJ's RFC finding is inconsistent with the VE's evidence because the "blunt, easy steps" limitation is not defined, and "SVP 2" refers not to the difficulty of a job but rather to the amount of time required for an individual to obtain proficiency in the job.[1]  Thus, the functional limitation of "blunt, easy steps" is unrelated to an SVP of 2. Moreover, he argues, the ALJ failed to explain whether the "blunt, easy steps" limitation is the same as the RFC limitation of "no more complex than one to three steps."

The Commissioner has not responded to this argument.  Mr. Soto-Rojas is correct that the ALJ's hypothetical to the VE conflated two separate vocational considerations.  The SVP level in a DOT listing indicating unskilled work does not address whether a job entails only simple tasks. See Rose v. Astrue, 2010 WL 3584561 (W. D. Wash. August 11, 2010) *4.  The issue of a job's simplicity appears to be more directly addressed by the GED (reasoning level) ratings.  Id. Thus, the ALJ's limitation of "blunt, easy steps" is not defined by, or even necessarily consistent with, an SVP of 2.

---

[1] The Dictionary of Occupational Titles ("DOT") is a publication of the United States Department of Labor that gives detailed requirements for a variety of jobs.  The Social Security Administration has taken administrative notice of the DOT.  Massachi v. Astrue, 486 F.3d 1149, 1153 n. 8 (9th Cir. 2007).  The DOT defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See United States Department of Labor, DOT (4th ed. 1991 rev.) Appendix C  http://www.occupationalinfo.org/appendxc_1.html. A job with an SVP 1 requires "short demonstration only," while a job with an SVP 2 requires demonstration "up to and including one month."  Id.  Unskilled work corresponds to an SVP of 1 or 2.  SSR 00-4p, 2000 WL 1898704 at *3.  The Social Security Administration relies "primarily on the DOT" for "information about the requirements of work in the national economy" at steps four and five of the sequential evaluation process.  Id. at *2.

Although the Social Security regulations contain only two categories of ability in regard to understanding and remembering instructions ("short and simple" or "detailed or complex"), the DOT has six gradations for measuring the ability to understand and remember instructions. Xiong v. Commissioner, 2010 WL 2902508 (E. D. Cal. July 22, 2010) *6, citing Meissl v. Barnhart, 403 F. Supp.2d 981, 984 (C.D. Cal. 2005). The ALJ's RFC limitation of "blunt, easy steps" falls within DOT's GED reasoning levels 1 ("Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.") and 2 ("Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.") DOT Appendix C III. DOT reasoning levels one and two encompass an ability to perform simple, routine work tasks. See Meissl, 403 F. Supp.2d at 984 and Xiong at *6 (collecting district court cases within the Ninth Circuit).

The VE provided the DOT numbers pertaining to the jobs of bench worker, electronics cleaner, and bottle packer. According to the DOT, the job of bench worker has an SVP of 3; because the VE erred in identifying bench worker as an SVP 2 job, bench worker cannot be considered as representative of jobs within Mr. Soto-Rojas's RFC. The VE identified the job of electronics cleaner as DOT number 706.687-010. However, this DOT number refers to the position of production assembler, not electronics cleaner. The job of production assembler is, however, described as SVP 2, GED reasoning level 2. The job of bottle packer, DOT 920.685-026, is described as SVP 2, GED reasoning level 2 as well. Since the DOT numbers for the jobs identified by the VE describe two of the three as SVP 2 and GED reasoning level 2, I conclude

that the VE's testimony with respect to the production assembler (mistakenly referred to by the VE as electronics cleaner) and bottle packer jobs is not inconsistent with the DOT or with the hypothetical presented to the VE.  However, the VE's testimony did contain several errors.

      3.    <u>Language limitation</u>

Mr. Soto-Rojas asserts that the ALJ erred by finding that he was able to communicate in English, even though he was provided a translator for the hearing.  He asserts that the ALJ erred by not inquiring of the VE whether a person with the inability to speak English would be able to perform the jobs she identified, all of which had an "L1" language requirement.  Level one requires these abilities:

> Reading:  Recognize the meaning of 2,500 (two or three syllable) words. Read at rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers.  Writing:  Print simple sentences containing subject, verb, and object, and series of numbers, names and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses.

The fact that Mr. Soto-Rojas used a translator at the hearing does not demonstrate that he is unable to speak or understand English.  The administrative record otherwise contains no reference indicating that Mr. Soto-Rojas was unable to communicate in English.  In fact, Joseph Allen, M.D. wrote in his notes of January 16, 2008, "He understands and speaks English quite well."  Tr. 177.  There is no indication that Mr. Soto-Rojas used a translator during PARQ (procedures, alternatives, risks and questions) conferences with Dr. Mhoon.  Dr. Borman wrote that he had discussed various treatment options with Mr. Soto-Rojas, without mentioning a translator.  Tr. 211.  I find no error by the ALJ here.

4.    Light work requirements

Mr. Soto-Rojas  asserts that the ALJ's RFC assessment of light work was inconsistent with her hypothetical to the VE that the individual be able to sit,  stand and walk, each, for four hours out of an eight hour day.  Mr. Soto-Rojas argues that under Social Security Ruling ("SSR") 83-10, light work requires the ability to "be on one's feet up to two-thirds of a workday," so that the full range of light work "requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday," with sitting "intermittently during the remaining time."  The Commissioner has not responded to this argument.

SSRs are issued by the Commissioner to clarify the Act's implementing regulations and the agency's policies.  Holohan v. Massanari, 246 F.3d 1195, 1202 n. 1 (9th Cir. 2001).  SSRs do not have the force of law, but they are binding on all components of the Social Security Administration.  Id. ; 20 C.F.R. § 402.35(b)(1).

I agree that the ALJ's hypothetical to the VE, involving the ability to sit, stand or walk for four hours is inconsistent with the agency definition of what constitutes light work, which is standing or walking six hours a day and sitting intermittently for the remaining two hours.  The DOT description of the assembler position, which is that it involves repetitive bench or line assembly operations or tending machines does not suggest any possibility that the worker can sit, stand or walk at will for periods of four hours each, as the ALJ's hypothetical stated, or of standing or walking for six hours and sitting for two hours, as SSR 83-10 requires.  The DOT description of the bottle packer positions indicates that it is performed from a standing position.

The ALJ's hypothetical to the VE is inconsistent with the exertional requirements of light work, as defined in SSR 83-10.  Besides being based on an incorrect assumption about what

constitutes light work, the VE's testimony contained obvious errors.  I conclude, therefore, that the VE's testimony is not competent evidence that supports the ALJ's finding that Mr. Soto-Rojas could perform the jobs described by the VE.

Mr. Soto-Rojas requests that this case be remanded for a new hearing.  Whether to remand for further proceedings is discretionary with the court and turns upon the likely utility of such proceedings.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  I conclude that a remand and a new administrative hearing are necessary so that the Commissioner can re-determine Mr. Soto-Rojas's RFC and, if necessary, re-determine whether, at step five of the sequential analysis, Mr. Soto-Rojas is capable of performing gainful employment in the national economy.

IT IS SO ORDERED.

Dated this ____6th____ day of January, 2011.


____/s/ Garr M. King_____
Garr M. King
United States District Judge